RENDERED:  JANUARY 3, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1046-MR

JAMES CRABTREE                                                        APPELLANT

v.                      APPEAL FROM MARTIN CIRCUIT COURT
                        HONORABLE JOHN H. HOLBROOK, JUDGE
                        ACTION NO. 22-CR-00039

COMMONWEALTH OF
KENTUCKY                                                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE:  James Crabtree appeals from a Martin Circuit Court judgment

and sentence on a plea of guilty.  He contends that the trial court erred in denying

his motion to withdraw the plea.  Upon careful review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 1, 2022, Mary Workman called 911 to report that David Collins, who lived nearby, had been stabbed and had come to her house, seeking help. According to Collins, Crabtree knocked on his door and began stabbing him when he opened it. Collins believed the assault was connected with a woman, Misty Runyon. While Collins was at the hospital being treated for his injuries, police secured his home and took Runyon to a motel. Crabtree was apprehended and indicted in Martin County on one charge of first-degree assault and one charge of first-degree burglary.

At the time of the stabbing, Crabtree was on supervised probation after being convicted in Pike Circuit Court of two charges of assault under extreme emotional disturbance. His probation in that case was revoked on May 11, 2022.

On March 10, 2023, Crabtree moved to enter a guilty plea in the Martin County case after accepting an offer from the Commonwealth to recommend a sentence of fifteen years on each count, to be run concurrently. The trial court conducted a plea colloquy in conformity with *Boykin v. Alabama*,[1] in which it asked Crabtree whether he was satisfied with his legal counsel, whether he understood the plea agreement, whether he had any questions about the agreement, whether he had been coerced in any way to accept the agreement, and whether he

---

[1] 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

understood the significant constitutional rights he was giving up by pleading guilty, including the right to a jury trial and the right to an appeal. Upon finding that Crabtree's plea was made knowingly, intelligently, and voluntarily, the trial court accepted the plea and scheduled the case for sentencing.

At the sentencing hearing on April 20, 2023, Crabtree's counsel informed the court that Crabtree wished to withdraw his plea. The trial court asked Crabtree whether he was aware that he was facing a potential sentence of twenty years on each of the two charges, both of which are class B felonies, and a potential sentence of forty years if the sentences were run consecutively. Crabtree's counsel added that Crabtree would also be PFO ("persistent felony offender") eligible. Crabtree indicated that he understood these potential consequences but still wished to withdraw his guilty plea. Crabtree's defense counsel moved to withdraw from the case because of a conflict due to the nature of the hearing as well as the breakdown of the client-attorney relationship. The trial court granted the motion and ordered the appointment of conflict counsel. The trial court also scheduled a hearing on the motion to withdraw the plea.

At that hearing, conflict counsel informed the court that Crabtree wanted to withdraw his plea because he believed he had obtained evidence that would prove his innocence. Conflict counsel explained that he did not intend to present the actual evidence at that time and that its admissibility at trial would have

to be determined, but he would argue the motion on Crabtree's behalf and leave it to the court's discretion to decide whether to allow him to withdraw the plea. The trial court asked him if he wished to argue the motion at that time or later; he told the court he wanted to do it at that time because he had to return to court in Floyd County. He proceeded to describe the evidence as consisting of text messages from Misty Runyon, who was an eyewitness to the stabbing incident, and explained that the messages could be used to cross-examine her. He also stated that he had warned Crabtree that if he withdrew his plea, the original offer from the Commonwealth of concurrent fifteen-year sentences would no longer be available and any future offer would be for a significantly longer sentence or an open plea.

When questioned by the trial court, Crabtree stated that he first learned of the text messages in a telephone conversation with his mother, which occurred after he pled guilty. The trial court also questioned him about the veracity of the sworn statements he had made at his plea colloquy. Crabtree acknowledged making the statements and did not say he had been untruthful. The Commonwealth attorney argued that Crabtree was complaining about the evidence in the case, not about the voluntariness of his plea.

The trial court took the matter under advisement and subsequently entered an order denying the motion after finding that, under the totality of the

circumstances, the guilty plea was entered knowingly, intelligently, and voluntarily. Its order stated, in pertinent, part:

> [T]he Defendant (under oath) stated to the Court that he had signed the Motion to Enter Guilty Plea voluntarily, without duress, threat or coercion, that his attorney and he had reviewed the Motion, that he fully understood it and had no questions about it. Further, the Defendant stated under oath that he had reviewed the Commonwealth's Offer with his counsel, understood it fully and had no questions about it. The Court explained to the defendant that the potential sentence for the two Class B Felonies was forty years. Finally, the Defendant stated (under oath) he understood the constitutional rights he was giving up by pleading guilty and knowing those rights, wished to plead guilty to the charges because he was guilty of the charges and for no other reasons.
>
> . . . It is the Court's opinion that the Defendant understood the nature of the proceedings and that the Defendant had a full understanding of the nature of the charges, the potential penalties and the consequences of his guilty plea. Further, the Defendant stated under oath that he had discussed the case extensively with his counsel, was satisfied by the work of his attorney and that he had no complaints whatsoever about the work of his attorney or her office. After accepting the Defendant's guilty plea, the Court explained to the Defendant the sentencing process and the Court finds the Defendant understood and had no questions for the Court.

Crabtree renewed his motion to withdraw the plea. The trial court denied the renewed motion and entered judgment in accordance with the plea agreement, sentencing Crabtree to fifteen years in prison. This appeal by Crabtree followed.

# STANDARD OF REVIEW

A criminal defendant may seek to withdraw a guilty plea pursuant to Kentucky Rules of Criminal Procedure (RCr) 8.10, which provides in relevant part that "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." "If the plea was involuntary, the motion to withdraw it must be granted. However, if it was voluntary, the trial court may, within its discretion, either grant or deny the motion." *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. App. 2004) (citations omitted). "Our case law is clear that the discretion to deny a motion to withdraw a guilty plea exists only after a determination has been made that the plea was *voluntary*. If the plea was *involuntary*, the motion to withdraw it must be granted." *Rodriguez v. Commonwealth*, 87 S.W.3d 8, 10 (Ky. 2002) (citations omitted).

The trial court's initial decision regarding the voluntariness of the plea is reviewed for clear error. *Rigdon*, 144 S.W.3d at 288. "A decision which is supported by substantial evidence is not clearly erroneous." *Id.* If the court decides that the plea was entered voluntarily, its decision to allow the plea to be withdrawn or not is reviewed for an abuse of discretion. *Id.* "A trial court abuses its discretion when it renders a decision which is arbitrary, unreasonable, unfair, or unsupported by legal principles." *Id.*

## ANALYSIS

Crabtree argues that his plea of guilty was not knowing, intelligent, and voluntary because he did not know of the existence of the allegedly exculpatory text messages at the time he entered the plea. He further contends that we do not know if his plea was voluntarily entered or whether he was coerced or threatened to take the plea because his conflict counsel did not question Crabtree or his original counsel about the breakdown of the attorney-client relationship or how it affected Crabtree's entry of his plea.

At the hearing on his motion to withdraw the plea, the trial court questioned Crabtree specifically about why he wished to withdraw the plea. Crabtree made no reference to any problems with his original counsel, or the plea process. His only reason for wanting to withdraw the plea was the text messages he had received from his mother. The situation is clearly distinguishable from *Sturgill v. Commonwealth*, a case upon which Crabtree relies. 533 S.W.3d 204 (Ky. App. 2017). When Sturgill was questioned about the reason he wished to withdraw his plea of guilty, he replied that the plea was "'against his will' and he had not wanted to do it." *Id*. at 207. No one questioned him any further about his claim and the trial court denied his motion to withdraw the plea. This Court vacated the order denying his motion because his statements raised doubts about the voluntariness of his plea:

> We do not know what Sturgill meant when he testified that the plea was made "against his will." Perhaps, as the trial court determined, it simply appeared in hindsight to be a bad bargain that Sturgill now regrets. However, it is also possible that Sturgill believed that his counsel impermissibly pressured him into accepting the plea or failed to properly advise him of its consequences. Had defense counsel simply questioned Sturgill further on this statement and the surrounding plea negotiations we would know for certain. However, he failed to do so.

*Id*. at 209-10. By contrast, Crabtree was afforded ample opportunity to tell the court his plea was involuntary or coerced, but he did not do so.

Although Crabtree alleges that his conflict counsel was in such a rush to get to Floyd County for another court appearance that he was denied counsel at a critical stage in the proceedings, the record does not support this contention. Conflict counsel informed the trial court that he was prepared to argue the withdrawal motion at the hearing, that he did not need to reschedule it, and that the judge in Floyd County had let him leave early to argue the withdrawal motion in Martin County and then return. Conflict counsel set forth the grounds for the motion thoroughly and there is no indication he cut his arguments short to Crabtree's disadvantage.

Finally, Crabtree's argument that his plea was not knowing, intelligent, and voluntary because he did not know about the exculpatory evidence at the time he entered the plea is not well-founded. The United States Supreme

Court has cautioned that subsequent events do not retroactively invalidate an

otherwise sound plea:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Brady v. United States*, 397 U.S. 742, 756-57, 90 S. Ct. 1463, 1473, 25 L. Ed. 2d

747 (1970).

It is for this reason that the entry of a valid guilty plea precludes post-

judgment challenges to the sufficiency of the evidence:

> The reasoning behind such a conclusion is obvious. A defendant who elects to unconditionally plead guilty admits the factual accuracy of the various elements of the offenses with which he is charged. By such an admission, a convicted appellant forfeits the right to protest at some later date that the state could not have proven that he committed the crimes to which he pled guilty. To permit a convicted defendant to do so would result in a double benefit in that defendants who elect to plead guilty would receive the benefit of the plea bargain

which ordinarily precedes such a plea along with the advantage of later challenging the sentence resulting from the plea on grounds normally arising in the very trial which defendant elected to forego.

*Taylor v. Commonwealth*, 724 S.W.2d 223, 225 (Ky. App. 1986).

The trial court's determination that Crabtree's plea was intelligent, knowing, and voluntary is supported by substantial evidence in the record and was therefore not clearly erroneous. The trial court's decision to deny the motion to withdraw the plea was well within its discretion and will not be disturbed on appeal.

## CONCLUSION

For the foregoing reasons, the final judgment and sentence on a plea of guilty of the Martin Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Roy Alyette Durham II
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky